UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 2:16-CR-166-PPS-JEM |
| ) | |
| LAJUAN FITZPATRICK, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

During a plot to steal a load of marijuana, Defendant Lajuan Fitzpatrick got in a gun battle with the victims that resulted in the death of a bystander. For this, he was indicted for conspiring to possess with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 841 and 846, and discharging or aiding and abetting the discharge of a firearm during and in relation to a drug conspiracy, resulting in murder, in violation of 18 U.S.C. § 924(j). [DE 1.] Fitzpatrick, represented by attorneys Jonathan Bedi and Dena Singer, proceeded to trial in November 2019. [DE 106; DE 107; DE 110; DE 112.] A jury convicted him on both counts. [DE 116.] I sentenced Fitzpatrick to 36 years on the murder charge in Count 2 and one day on the drug charge in Count 1. [DE 166.] On April 27, 2022, the Seventh Circuit affirmed his judgment and sentence. [DE 182.] *See United States v. Fitzpatrick*, 32 F.4th 644 (7th Cir. 2022).

On July 27, 2023, Fitzpatrick filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. [DE 183.] I ordered the government to file a response [DE 188], and the deadline for Fitzpatrick to file his reply has expired, so the motion is ripe for my review.

Section 2255(a) authorizes a federal court to grant relief where a federal prisoner's sentence "was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law." The Seventh Circuit has observed that this is a high bar: "Relief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013)). A motion brought under § 2255 is not an opportunity to relitigate the facts or present a different defense theory of the case that could have been brought at trial and perhaps better persuaded a jury. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).

Fitzpatrick's motion raises two grounds for relief, arguing that his rights were violated by ineffective assistance of counsel. [DE 183 at 7.] More specifically, he asserts that his lawyers were ineffective because they failed to object to the Court's jury instruction on the meaning of the term "distribute" in connection with the drug charge (Ground One), and by failing to object to testimony from witnesses that he claims was unduly prejudicial under Rule 403 of the Federal Rules of Evidence (Ground Two). *Id.* Neither ground has merit.

* * *

If a § 2255 motion claiming ineffective assistance of counsel survives preliminary review and is considered on its merits, I must evaluate the claim under the two-prong

*Strickland* test. *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Under *Strickland*, the petitioner must prove (1) that her attorney's performance fell below an objective standard of reasonableness, and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McDowell*, 497 F.3d at 761. If either the performance or prejudice component of a petitioner's ineffective assistance claim is deficient, there is no need for me to evaluate the other part of the test. *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir.1990). *See also Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir.1993) ("A defendant's failure to satisfy either prong is fatal to [her] claim.").

This is a fluid standard, and "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Strickland*, 466 U.S. at 688-89. "Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id.* The flexibility of this objective test is not intended to create greater space for courts to examine past events with 20/20 hindsight

and declare unsuccessful advocacy to be unreasonable simply because it was didn't work.

My review of attorney performance is "'highly deferential,' with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689). Counsel is "strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment." *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004). Hence, it is "not easy for a petitioner to show that [her] counsel's performance was objectively ineffective, as . . . '[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.'" *Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)). In order to establish that counsel's performance was deficient, the defendant must show errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Hartjes*, 456 F.3d at 790.

As to the second element, a showing of prejudice as a result of counsel's ineffective assistance, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Pergler*, 233 F.3d 1005, 1011 (7th Cir. 2000) (quoting *Strickland*, 466 U.S. at 693-94). It is not enough that a defendant "show merely that 'the errors had

4

some conceivable effect on the outcome of the proceeding.'" *Id.* Counsel's conduct must be shown to have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cooper*, 378 F.3d at 642 (citing *Strickland*, 466 U.S. at 686). Like the first prong, this test is also "highly deferential to counsel and presumes reasonable judgment and effective trial strategy." *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2005).

## I. The Jury Instruction Concerning Distribution

Fitzpatrick first asserts that his attorneys were ineffective because they failed to seek a jury instruction defining the term "distribution," for purposes of the drug conspiracy count, consistent with *Weldon v. United States*, 840 F.3d 865 (7th Cir. 2016). The jury was instructed on the legal elements for a charge of conspiracy to possess with intent to distribute a controlled substance, as follows: "First, that the defendant knowingly possessed a controlled substance; and, second, *the defendant intended to distribute the substance to another person*; and, third, that the defendant knew the substance was some kind of controlled substance." [DE 131 at 133 (emphasis added).]

In *Weldon*, three individuals pooled their money and bought heroin. Weldon possessed the heroin, then gave it to another individual who mixed it with water and injected the drug mixture into the trio. *Id.* at 866. One individual died as a result of the injection. Weldon pled guilty to illegally distributing the drugs that resulted in death, and a co-defendant was acquitted on the same charge after asserting that her conduct did not constitute "distribution." *Id.* The Seventh Circuit concluded that Weldon's

5

attorney provided ineffective assistance by persuading him to plead guilty to illegally distributing the drugs that resulted in the death. *Id.* at 867 ("What matters is that the defendants were participants in the same transaction. No cases require literal simultaneous possession[.] . . . Given these decisions, the insistence of Weldon's lawyer to his client 'umpteen times' that a defense to the charge of distribution had a zero chance of success was constitutionally deficient."). *Weldon* makes clear that a defendant may present a defense theory that he is not guilty of a drug distribution charge because individuals who "'simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together' are not distributors, 'since both acquire possession from the outset and neither intends to distribute the drug to a third person," and so "neither serves as a link in the chain of distribution.'" *Id.* (quoting *United States v. Swiderski*, 548 F.2d 445, 450 (2d Cir. 1977)) (collecting out-of-circuit authorities for same proposition and noting it was an issue of first impression in Seventh Circuit).

      Fitzpatrick takes the view that because the jury was not instructed on the definition of "distribution," consistent with *Weldon*, the government was relieved of its burden to prove that there was a conspiracy to distribute marijuana. (This ignores the fact that a charge of conspiracy to possess with the intent to distribute is a distinct crime from the drug distribution charges at issue in *Weldon*, but we will return to that momentarily.) Fitzpatrick asserts that had counsel objected to the instructions submitted to the jury, there is a reasonable probability that I would have given an instruction consistent with *Weldon* and the jury would have returned a verdict of not guilty. In

response, the government argues that counsel's failure to request this instruction was a reasonable strategic decision based on the defense theory that the government failed to prove beyond a reasonable doubt that Fitzpatrick was involved in the robbery and shooting to begin with.

This is essentially a story of two different defense theories. Both were conceivably on the table. The issue, for present purposes, is that counsel's choice to take a different course than the one now pressed by Fitzpatrick amounts to little more than "Monday morning quarterbacking." *See, e.g., United States v. Tartareanu*, 2020 WL 5576730, at *6 (N.D. Ind. Sept. 17, 2020). In closing arguments, the defense focused its attention on the strength of evidence linking Fitzpatrick to the conspiracy. Counsel argued that the government's case was built on testimony from "opportunistic convicted felons and admitted liars." [DE 131 at 83.] The "only evidence" tying Fitzpatrick to the drug robbery and shooting was "from guys that were getting sweetheart deals that had everything to lose unless they cooperated." *Id.* The government's case failed, his lawyers argued, because "Lajuan was never there" and, as to the drug count, "[n]o drugs were found." *Id.* at 84. All of this reflects a defense theory that Fitzpatrick had nothing to do with the alleged drug conspiracy at all – he wasn't there, and he was never found in possession of drugs. This theory, which hinged on jurors perceptions of the credibility of evidence linking Fitzpatrick to the conspiracy, would have resulted in acquittal on both counts.

Alternatively, counsel could have pursued a *Weldon* instruction, as Fitzpatrick now presses. But doing so would have implied a different defense theory: Fitzpatrick *was* part of the conspiracy, but only to steal a user quantity of drugs with his buddies, not for distribution to any third party. The government argues that this alternative theory "had no jury appeal or support in the evidence." [DE 188 at 9.]

This alternative theory flies in the face of the evidence adduced at trial. As summarized by the Seventh Circuit in affirming Fitzpatrick's conviction and sentence on direct appeal, the government presented substantial evidence that Fitzpatrick joined a scheme with Robert Nieto (a leader of the Latin Kings gang), Bruce Hendry, and Mark Cherry, to rob a local drug dealer, Anthony Martinez, at gunpoint. *See Fitzpatrick*, 32 F.4th at 646. Nieto believed it would be "easy" to "score a couple of pounds of marijuana." *Id.* Nieto, Cherry, and Hendry planned to smoke some of the pot and sell the rest. Fitzpatrick drove to Martinez's home along with Hendry and Cherry to rob Martinez. The three exited the vehicle armed and wearing masks. In the course of the robbery, chaos ensued, during which Fitzpatrick fired "'rapid fire' shots aimed at the house," turning the scene into a "'war zone' amid copious amounts of gunfire." *Id.* at 646–47. A neighbor of Martinez's was shot and died as a result of his injuries. *Id.* at 647. There was sufficient circumstantial evidence from which the jury could find "it unlikely that Fitzpatrick or his co-conspirators would have endeavored to carry out this dangerous operation requiring armament if the reward was merely marijuana for recreational use." *Id.* at 650.

This all supports the conclusion that Fitzpatrick's counsel elected not to pursue a *Weldon* instruction because it was simply unpersuasive in the context of the evidence elicited at trial. The trial record substantially reinforces the view that counsel's failure to seek an instruction on the definition of the term distribute consistent with *Weldon*, in addition to the instructions submitted to the jury on the elements of the offense, was strategic in nature and thus entitled to a presumption of reasonableness. *See Strickland*, 466 U.S. at 689–90.

There are a few additional reasons why counsel's performance in this regard did not fall short of an objectively reasonable standard. Had counsel pursued a defense theory based on *Weldon*, an instruction would only have been warranted if "supported by the evidence," *United States v. Griffin*, 76 F.4th 724, 740 (7th Cir. 2023), and if the instruction was a "correct statement of law" in "the context of this case," *Harden v. United States*, 986 F.3d 701, 706 (7th Cir. 2021). Weldon involved a situation where the defendant bought drugs for his personal consumption. In Fitzpatrick's case, by contrast, there was no evidence that he was a user of marijuana or that he intended to steal the drugs only for his own use. *See Youngberg v. Watson*, No. 19-1140, 2021 WL 2815412, at *2 (7th Cir. Mar. 5, 2021) (rejecting ineffective assistance of counsel claim based on counsel's failure to raise insanity defense where defendant "points to no evidence that would have supported either an insanity defense or finding of incompetency," and merely asserted that "[w]hoever committed the murder had obvious mental and psychological issues"). Moreover, as noted above, the issue in this case was whether Fitzpatrick conspired to

possess with the intent to distribute marijuana, not whether he in fact distributed drugs. Insofar as *Weldon* is not on all fours with this conspiracy case, "in the context of this case," the instruction appears to find no application. *See Harden*, 986 F.3d at 706. For these additional reasons, counsel's failure to seek or object to the exclusion of an instruction under *Weldon* did not fall below a standard of objective reasonableness supporting a claim of ineffective assistance.

Even if it were the case that counsel's performance was deficient in this regard, I am unpersuaded that the absence of this additional, non-pattern instruction resulted in any prejudice to Fitzpatrick. It is not reasonably likely that a jury would have returned a different verdict on this record based on the notion that Fitzpatrick, a non-user of marijuana, agreed to go to Martinez's home and fire off a hail of bullets to acquire a user quantity of drugs that he had no intention of distributing. There was ample evidence from which a jury could "find it unlikely that Fitzpatrick or his co-conspirators would have endeavored to carry out this dangerous operation requiring armament if the reward was merely marijuana for recreational use." *Fitzpatrick*, 32 F.4th at 650 ("Fitzpatrick was savvy enough to provide coverage fire while his co-conspirator was being pulled out of the house, to avoid capture at Nieto's, and to wash off and burn away traces of the crime. Nothing on the record precludes the jury from reasonably concluding Fitzpatrick was capable of understanding that the goal of the robbery was at least, in part, to acquire drugs for resale as opposed to purely recreational use.").

In sum, because Fitzpatrick fails to demonstrate that his counsel's performance

was deficient and that this performance prejudiced him, *see Strickland*, 466 at 687, his first ground for relief lacks merit.

## II.   Counsel's Failure to Object to Testimony Under Rule 403

Fitzpatrick's second ground for relief asserts that his lawyers were constitutionally deficient in failing to object to the admission of witness testimony at trial. The Seventh Circuit has held that counsel's decision not to object, even where the evidence at issue was likely inadmissible, is strategic and thus not ineffective. *Bryant v. Brown*, 873 F.3d 988, 997 (7th Cir. 2017) ("Errors resulting from strategic miscalculations may fall within the wide range of competent representation."). *See also Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003) ("A competent trial strategy frequently is to mitigate damaging evidence by allowing it to come in without drawing additional attention to it, such as an objection would."). These holdings go back to the longstanding view expressed by the Supreme Court that, for purposes of evaluating the reasonableness of attorney performance, "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689–90 (noting "[t]here are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way"). With that in mind, I will evaluate the specifics of Fitzpatrick's claim based on counsel's failure to object to the admission of witness testimony.

As outlined above, in 2013, Robert Nieto learned that Anthony Martinez had "pounds of marijuana at his home." *Fitzpatrick*, 32 F.4th at 646. Nieto plotted to rob Martinez with Bruce Hendry and Mark Cherry. *Id.* Fitzpatrick, a roommate and childhood friend of Cherry's, became involved in the scheme. *Id.* Cherry, Hendry, and Fitzpatrick drove to Martinez's house and exited their car wearing masks and carrying firearms. *Id.* When Martinez answered the front door, one of the trio hit him in the head with a pistol and covered his face. *Id.* Cherry interrogated Martinez about "where the marijuana was kept." *Id.* Martinez's brother, Elias, ran to his aid from his home next door. *Id.* Standing guard outside the house, Fitzpatrick fired "'rapid fire shots' aimed at the house." *Id.* at 646–47.

One of the bullets Fitzpatrick fired hit a next-door neighbor of Martinez's, Rolando Correa, Jr. *See id.* at 647. At trial, Anthony Martinez testified that after Correa was struck by the gunfire, he asked for his two-year-old daughter. [DE 129 at 51.] Martinez testified that Correa stated that "he was very sad and didn't know what to say other than daddy's sorry he's not going to be there." *Id.* at 53. Brian Horst, a neighbor of Martinez's who arrived at the scene and "heard the gunfire," also testified. *Id.* at 130. Horst said that he observed Correa "kiss[] his daughter for the last time," and that he "had to take his little girl from [Correa] and walk outside with her [be]cause her daddy was dying." *Id.* at 179–80. Fitzpatrick's counsel did not object to the admission of this testimony at trial as irrelevant or unduly prejudicial under Rules 402 and 403 of the Federal Rules of Evidence.

12

Fitzpatrick asserts that this testimony was inadmissible under Rule 403 and that his attorneys provided him ineffective assistance by failing to object to its admission. [DE 183 at 7.] Absent this "prejudicial testimony," he claims, there is a reasonable probability that he would not have been convicted of the charges. *Id.* The government responds that counsel's decision not to object was strategic, as reflected in the approach taken at closing arguments. Indeed, by not objecting to this testimony, defense counsel was able to seize on the opportunity to accuse the government of gilding the lily. The testimony was nothing more than a pure sympathy play, as defense counsel pointed out in closing: "[t]he government . . . constantly asked about Mr. Correa's young daughter, and that is tragic, and no one is minimizing that." [DE 131 at 85.] In the same breath, counsel emphasized that the government "did that . . . to play on [jurors'] sympathy, and [jurors] promised at the beginning of this trial to put [their] sympathy aside." *Id.* While the events were undeniably "sad," counsel admonished the jury that "the tragedy also lies in convicting a person that is not guilty." *Id.*

Choosing not to object was a strategic choice made by a very experienced and competent defense team. And this kind of decision "fall[s] within the wide range of competent representation." *Bryant*, 873 F.3d at 997. It was not objectively unreasonable for counsel to attempt to mitigate the effect of this testimony by permitting its admission "without drawing additional attention to it, such as an objection would." *Hardamon*, 319 F.3d at 949.

Finally, Fitzpatrick also fails to show that this error (if it was one at all) resulted in prejudice. To put it bluntly, there was overwhelming evidence of Fitzpatrick's involvement in the crime, separate and apart from these statements, which were a trifle in an otherwise lengthy trial. Fitzpatrick's conclusory statement that it is reasonably probable that excluding these statements would have made a difference in the results of the trial [DE 183 at 7], is not remotely persuasive. For either of these reasons, Fitzpatrick's second ground for relief fails under *Strickland*.

**ACCORDINGLY:**

For the reasons explained in this Opinion and Order, Defendant Lajuan Fitzpatrick's Motion to Vacate, Set Aside, or Correct his Sentence [DE 183] is **DENIED**.

**SO ORDERED**.

ENTERED: February 7, 2024.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT